# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2020

Lyle W. Cayce
Clerk

No. 20-60037
Summary Calendar

Fithawi Teklay Sebhatleab,

*Petitioner*,

*versus*

William P. Barr, *U.S. Attorney General*,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 682 381

Before Wiener, Southwick, and Duncan, *Circuit Judges.*

Per Curiam:[*]

Fithawi Teklay Sebhatleab, proceeding *pro se*, has petitioned for review of a decision of the Board of Immigration Appeals (BIA). The BIA denied his motion to remand and dismissed an appeal from an immigration judge's order denying asylum, withholding of removal, and relief under the

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Convention Against Torture (CAT).  We DENY IN PART the petition for review and DISMISS IN PART for lack of jurisdiction.

When considering a petition for review, we review the opinion of the immigration judge (IJ) when it influenced the BIA decision, as it did here. *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).  We review factual findings for substantial evidence, meaning that we do not reverse the BIA's factual findings "unless the evidence compels it."  *Id.* at 536–37.

The IJ found that Sebhatleab was not credible.  The credibility determination relied in part on the supposed inconsistency in the assertions by Sebhatleab and Teklemariam, his friend with whom he escaped, about the distance between the Tessenei prison where they were detained and the Sudanese border.  Sebhatleab testified that "[i]f you walk, it would take you almost 10 hours," and Teklemariam's statement was that "the prison was not that far from the Etrirean/Sudanese border and we managed to walk on foot across the border."  We do not see any inconsistent meaning in the two ways to refer to the distance.  "Not that far" might well take several hours to traverse if the distance has to be travelled on foot.

Though these two statements do not affect Sebhatleab's credibility, there was other evidence on which the IJ based the credibility decision.  She found that his testimony regarding certain important details was inconsistent from his credible-fear hearing to his removal proceeding, including the timeline of threats and detention, where on the body injuries were inflicted, and how Sebhatleab and his friend escaped.  She also found that he had used false documents to travel through the Middle East, Africa, and to South America.  The IJ's credibility finding is a reasonable interpretation and is supported by substantial evidence, which we sustain when the evidence fails to compel the opposite finding.  *Chun v. I.N.S.*, 40 F.3d 76, 79 (5th Cir. 1994).  It fails to compel a different finding here.

Further, Sebhatleab argues that the BIA should have addressed his contention that the IJ erred by failing to give him an opportunity to explain the perceived inconsistencies between his testimony and the documentary evidence.  Where, as here, the BIA's decision itself causes a new issue to arise, a party must bring the issue to the BIA's attention through a motion for reconsideration. *See Omari v. Holder*, 562 F.3d 314, 320–21 (5th Cir. 2009).  Sebhatleab did not do so, and this claim that he should have been given an opportunity to explain is unexhausted.  We have no jurisdiction to consider it. *See id.*

Sebhatleab contends that the BIA erred by determining that the evidence he submitted with his motion to remand could have been obtained prior to the removal hearing.  He refers to his detention during removal proceedings and the difficulties he had obtaining statements from his relatives in Eritrea.  A remand by the BIA is necessary if the evidence being sought "was not available and could not have been discovered or presented at the former hearing." *Milat v. Holder*, 755 F.3d 354, 365 (5th Cir. 2014) (quoting 8 C.F.R. 1003.2(c)(1)).  Sebhatleab has not shown that level of difficulty, as he did not attempt to obtain statements from his relatives until after the IJ's decision.  Once he requested statements from his relatives, he received them within three weeks.

Sebhatleab next argues that he was improperly denied the opportunity to establish his case by submitting evidence to corroborate his testimony that he had scars on his body as a result of beatings while he was detained in Eritrea.  To the extent that he argues that the IJ abused her discretion by not requesting that officials at his detention facility allow his counsel to take photographs of the scars, the issue is unexhausted, and we lack jurisdiction to consider it. *See Omari*, 562 F.3d at 320–21. Further, to the extent that Sebhatleab asks this court to consider a "constitutional

claim," the issue is not adequately briefed. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

According to Sebhatleab, he obtained photographs of his scars on March 17, 2020, approximately four months after the BIA dismissed his appeal, which were taken by a nurse at the Jackson Parish Detention Center. Sebhatleab asserts that he should be given an opportunity to present these photographs, and he asks this court to instruct the BIA to remand his case to the IJ to consider the photographs.

"Under 28 U.S.C. § 2347(c), [this court] may order a remand if (1) the additional evidence sought to be offered is material and (2) there were reasonable grounds for the alien's failure to submit the additional evidence to the agency." *Miranda-Lores v. I.N.S.*, 17 F.3d 84, 85 (5th Cir. 1994). The party must "show[] to the satisfaction of the court" that the above two requirements are met. § 2347(c).

Sebhatleab argues that detention-facility officials refused to allow photographs to be taken of Sebhatleab's scars. But Sebhatleab has presented no evidence that he or his counsel tried to obtain photographs before his removal hearing or why he was not able to obtain the evidence more promptly. He has failed to show reasonable grounds for his failure to submit evidence of his scars to the agency. *See* § 2347(c)(2); *Miranda-Lores*, 17 F.3d at 85.

Finally, Sebhatleab contends that the BIA erred by denying his claim for relief under the CAT. He acknowledges that the IJ found that some of his testimony was not credible, but he asserts that the record is clear that he fled Eritrea illegally, and he contends that his unlawful departure from Eritrea will subject him to torture if he is forced to return.

The standards for CAT relief differ from those for asylum; a CAT claim requires a separate analysis. *See Efe v. Ashcroft*, 293 F.3d 899, 906–07

(5th Cir. 2002).  A claim for protection under the CAT requires the alien to show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2); *see Efe*, 293 F.3d at 907.

Although an adverse credibility determination in the context of asylum does not necessarily affect the disposition of a CAT claim, evidence of Sebhatleab's CAT claim is affected by the credibility of his assertions that he escaped from detention and departed Eritrea unlawfully.  Thus, the credibility determination goes directly to the issue whether Sebhatleab will be tortured in Eritrea.  *See Efe*, 293 F.3d at 907–08.  Sebhatleab "has not shown the evidence is so compelling that no reasonable fact finder could fail to find [him] eligible for CAT relief."  *Roy*, 389 F.3d at 140.

Petition for review is DENIED IN PART and DISMISSED IN PART.