**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 9, 2012

No. 09-60795

Lyle W. Cayce
Clerk

BRUNO RODRIGUEZ-MANZANO, also known as Bruno Manzano,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Appeal from the Board of Immigration Appeals

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Rodriguez-Manzano appeals both the Board of Immigration Appeals' ("BIA's") dismissal of his initial appeal of the denial of his motion to reopen his deportation proceedings because of ineffective assistance of counsel and its denial of his motion for reconsideration. We AFFIRM the denial of Rodriguez-Manzano's initial motion to reopen. We REVERSE the BIA's denial of Rodriguez-Manzano's motion for reconsideration, however, because it abused its discretion by ignoring its own precedent to require Rodriguez-Manzano to show that he had exercised due diligence in pursuing his ineffective assistance of counsel claim.

## I.

In October 1987, Rodriguez-Manzano, an El Salvadorian citizen, received an order to show cause from the then-Immigration and Naturalization Service[1] charging him with entering the United States without an inspection. His attorney at that time, Roberto Ramos, admitted the allegations against him, conceded the charge, and requested asylum. In August 1988, the Immigration Judge sent Ramos a letter, notifying him that an "individual calendar hearing was scheduled for September 29, 1988, at the Immigration Judge's office in Harlingen, Texas." When Rodriguez-Manzano failed to appear at the hearing, the Immigration Judge issued a boilerplate order that Rodriguez-Manzano be deported.

Nearly twenty years later, through new counsel, Rodriguez-Manzano filed a motion to reopen the proceedings against him, arguing that Ramos's ineffective assistance excused his failure to attend the 1988 hearing. Rodriguez-Manzano argued that "Mr. Ramos obviously failed to contact or notify [him] regarding his subsequent hearings before the Immigration Court." The Immigration Judge denied Rodriguez-Manzano's motion, finding that Rodriguez-Manzano had failed to comply with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). *Lozada* requires an alien seeking to reopen deportation proceedings because of ineffective assistance of counsel to present: (1) an affidavit from the alien detailing the relationship with counsel; (2) evidence that former counsel had been informed of the ineffective assistance of counsel claim and given a chance to respond to it; and (3) evidence as to whether a complaint had been filed with the appropriate disciplinary authorities. *Lara v. Trominski*, 216 F.3d 487, 496 (5th Cir. 2000); *Lozada*, 19 I. & N. Dec. at 639.

---

[1] The Immigration and Naturalization Service's responsibilities have since been transferred to the Department of Homeland Security's Bureau of Immigration and Customs Enforcement. *Zaidi v. Ashcroft*, 374 F.3d 357, 358 n.1 (5th Cir. 2004).

Rodriguez-Manzano appealed the Immigration Judge's decision to the BIA. The BIA cited *In re Cruz Garcia*, 22 I. & N. Dec. 1155 (BIA 1999) in support of its conclusion that Rodriguez-Manzano's motion to reopen was timely despite current regulations that impose timing limitations on motions to reopen filed today, because those regulations do not apply to motions to reopen deportation proceedings like Rodriguez-Manzano's that commenced in 1987. Although it concluded that the motion was timely filed, it dismissed Rodriguez-Manzano's appeal, determining that he had failed to comply with *Lozada*. Rodriguez-Manzano filed a timely petition for review of the BIA's decision.

Rodriguez-Manzano filed a motion for reconsideration[2] of the BIA's denial of his motion to reopen, or, in the alternative, a motion for the BIA to reopen the merits of his case *sua sponte*. Rodriguez-Manzano argued that since the BIA issued its original decision, he had complied with *Lozada* and attached a copy of a bar complaint he had filed against Ramos to his Motion for Reconsideration. He claimed that his prior failure to comply with *Lozada* was justified because he had been unable to locate Ramos. Indeed, further investigation revealed that Ramos was not a licensed attorney in Texas and that he no longer resided in the United States. Rodriguez-Manzano also claimed that Ramos's law office—the Law Office of Lionel Perez—refused to offer him any assistance in locating Ramos. The BIA agreed that Rodriguez-Manzano had complied with *Lozada*. Nevertheless, it denied his motion, reasoning that Rodriguez-Manzano had failed to pursue his claim with due diligence. Rodriguez-Manzano filed a timely petition for review of the BIA's decision.

---

[2] Although Rodriguez-Manzano styled his motion as a motion for reconsideration or for *sua sponte* reopening of the Board's September 28, 2009, decision, the motion did not allege a legal or factual error in that decision. Instead, he proffered additional documentation meant to satisfy *Lozada*, and , thus, the BIA properly considered the motion a motion to reopen. *See Ramos-Bonilla v. Mukasey*, 543 F.3d 216, 219 n.3 (5th Cir. 2008). For clarity's sake, we refer to Rodriguez-Manzano's first motion as his motion to reopen and his second motion as his motion for reconsideration.

## II.

We first explain this case's statutory background that provides the basis of our jurisdiction over this appeal. Proceedings against Rodriguez-Manzano commenced in 1987. At that time, judicial review of the BIA's decisions was governed by Section 106(a) of the Immigration and Nationality Act (INA). *See Medina v. INS*, 1 F.3d 312, 314 & n.4 (5th Cir. 1993) (explaining that under Section 106(a), BIA decisions are appealed directly to the Court of Appeals). Since then, however, Congress has enacted two laws affecting our jurisdiction over claims raised in immigration petitions.

First, Congress repealed Section 106(a) of the INA and enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996), which contained transitional rules limiting the scope of judicial review of deportation proceedings commenced prior to its effective date of April 1, 1997. IIRIRA §§ 306(b) & 309(c). Second, in 2005, Congress enacted the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005) (codified as amended at 8 U.S.C. § 1252), Section 106(d) of which provides:

> A petition for review filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . .) shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section.

Accordingly, the jurisdictional rules codified in 8 U.S.C. § 1252 control here.

The government contends that our decision in *Ramos-Bonilla v. Mukasey*, 543 F.3d 216 (5th Cir. 2008), prevents us from exercising jurisdiction here. In that case, the BIA denied Ramos-Bonilla's 2007 motion to reopen his deportation proceedings for not being timely filed as required by 8 C.F.R. § 1003.2(c)(2). *Id.* at 218-19. Ramos-Bonilla appealed, arguing that the BIA abused its discretion by failing to apply equitable tolling or waive 8 C.F.R. § 1003.2(c)(2)'s limitations on motions to reopen. *Id.* at 219. We agreed with the BIA that, under current

regulations, Ramos-Bonilla's motion was untimely, and thus "the only remedy available was under the IJ's or the BIA's *sua sponte* authority to reopen the case." *Id.* at 219. We held that because those regulations "g[a]ve[] an IJ or the BIA complete discretion to deny untimely motions to reopen, the reviewing court ha[d] no legal standard by which to judge the IJ's ruling, and therefore the court lack[ed] jurisdiction." *Id.* at 220 (citing *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 249-50 (5th Cir. 2004)).

Relying on that case, the government argues that we lack jurisdiction to review Rodriguez-Manzano's claim because his motion was untimely, and therefore, the BIA could only grant it *sua sponte*. The government's reliance on *Ramos-Bonilla* is misplaced because the regulatory regime relevant to that case does not apply here. For deportation orders issued prior to 1992, like Rodriguez-Manzano's, there are no time limits on motions to reopen or reconsider. *See Cruz-Garcia*, 22 I. & N. Dec. at 1159 (holding that post-1992 regulations imposing timing requirements on motions to reopen deportation proceedings do not apply retroactively to motions to reopen deportation proceedings commencing before 1992).[3] Therefore, Rodriguez-Manzano's motion was not untimely, and we have jurisdiction to review the BIA's decision.

We review the BIA's decision, considering the Immigration Judge's underlying decision only if it influenced the BIA's determination. *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002). We review the denial of

---

[3] Ramos-Bonilla's motion was governed by the same regulations that apply to motions filed today. 8 C.F.R. § 1003.2(c)(2)'s time limitation requires an alien to file a motion to reopen "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." Its number limitation restricts aliens to only one motion to reopen. 8 C.F.R. § 1003.2. Similar limits apply to motions to reopen *in absentia* deportation proceedings. *See* 8 C.F.R. § 1003.23(b)(4)(ii) (setting forth a 180-day deadline for filing motions to reopen deportation orders entered *in absentia*, and explaining that an "alien may file only one motion pursuant to this paragraph").

Both of Rodriguez-Manzano's petitions would fail if the current regulations applied here: his first petition would be time-barred, and the second would be both time and number-barred. If that were the case, he would be forced to invoke the BIA's *sua sponte* authority, the exercise of which we lack jurisdiction to review.

a motion to reopen under "a highly deferential abuse-of-discretion standard." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). We must uphold the BIA's decision unless it was "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (internal quotation marks omitted). Although we review questions of law *de novo*, we "accord[] deference to the BIA's interpretation of immigration statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect." *Gomez-Palacios*, 560 F.3d at 358 (citing *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997)).

## III.

### 1.    *Rodriguez-Manzano's Initial Motion To Reopen*

Rodriguez-Manzano argues that the BIA abused its discretion by denying his initial motion to reopen. In 1988, when the Immigration Judge ordered Rodriguez-Manzano deported, Section 1252(b) required an alien seeking to reopen an *in absentia* deportation proceeding to demonstrate "reasonable cause" for failing to attend the previous hearing.[1] *Williams-Igwonobe v. Gonzales*, 437 F.3d 453, 455 (5th Cir. 2006) (observing that where an alien seeks to open a deportation hearing conducted under Section 1252(b) where the immigration judge reached the merits of the alien's claim for relief, the reasonable cause standard applies).[2] Ineffective assistance of counsel can justify reopening

---

[1] Current regulations are stricter. Today, courts may only grant motions to reopen an order entered *in absentia* if the alien's failure to attend was due to "exceptional circumstances" beyond his control. 8 C.F.R. § 1003.23(b)(4)(ii).

[2] Neither party challenges the Immigration Judge's or the BIA's application of the "reasonable cause" standard. We have held, however, that in cases like this one where the Immigration Judge does not reach the merits of the alien's claims and instead orders him deported in a boilerplate order strictly because he failed to attend his hearing, the alien need not show reasonable cause for his failure to attend the hearing. *Williams-Igwonobe v. Gonzales*, 437 F.3d 453, 455-56 (5th Cir. 2006). Even if Rodriguez-Manzano were not required to show reasonable cause for his failure to attend the hearing, he would still be required to meet *Lozada*'s requirements in order to justify reopening his deportation proceedings. *See, e.g.*,

deportation proceedings if the alien (1) provides an affidavit attesting to the relevant facts, including a statement of the terms of the attorney-client agreement; (2) informs counsel of the allegations and allows counsel an opportunity to respond; and (3) files a grievance or explains why a grievance has not been filed against the offending attorney. *Mai*, 473 F.3d at 165 (citing *Lozada*, 19 I. & N. Dec. at 639); *Lara*, 216 F.3d at 496 (citing *Lozada*, 19 I. & N. Dec. at 639).

The BIA rejected Rodriguez-Manzano's first motion to reopen, finding that he had failed to meet *Lozada*'s second requirement. Instead of arguing that he had met that requirement, Rodriguez-Manzano contends that because Ramos had left the country and because he did not see how compliance with *Lozada* would "serve any bona fide interests," we should apply *Lozada* flexibly and excuse his non-compliance. We have rejected similar arguments for a flexible approach to *Lozada*. *See Lara*, 216 F.3d at 497-98 (confirming that the BIA does not abuse its discretion by requiring compliance with *Lozada*). Therefore, the BIA did not abuse its discretion by denying Rodriguez-Manzano's initial motion to reopen.[3]

---

*Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006) (citing *Lozada*, 19 I. & N. Dec. at 639) (confirming that *Lozada* applies to motions to reopen deportation proceedings based on ineffective assistance of counsel, even when the reasonable cause standard does not apply). Therefore, we do not tarry over the BIA's application of the reasonable cause standard.

[3] Rodriguez-Manzano makes two other arguments that can be quickly dispatched. First, he contends that the fact that Ramos was not licensed as an attorney in Texas excuses his failure to meet *Lozada*'s second requirement. That argument fails, though, because he did not raise it before either the Immigration Judge or the BIA. Accordingly, he failed to exhaust his administrative remedies regarding this claim, and we will not consider it. *Wang v. Ashcroft*, 260 F.3d 448, 452-53 (5th Cir. 2001) ("An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA—either on direct appeal or in a motion to reopen."). Second, Rodriguez-Manzano argues that he did not receive notice of the hearing even though his attorney did. At the time of Rodriguez-Manzano's 1988 deportation hearing, however, properly notifying his former counsel of the time, date, and location of the hearing constituted adequate notice to Rodriguez-Manzano. *Men Keng Chang v. Jungi*, 669 F.2d 275, 277-78 (5th Cir. 1982).

## 2.    *Rodriguez-Manzano's Motion for Reconsideration*

Rodriguez-Manzano argues that the BIA abused its discretion by denying his motion for reconsideration as well.  The BIA concluded, and the government conceded at oral argument, that Rodriguez-Manzano had complied with *Lozada* by the time he filed his second motion to reopen.  The BIA nevertheless denied Rodriguez-Manzano's argument, contending that, despite his compliance with *Lozada*, he had failed to pursue his ineffective assistance of counsel argument with due diligence.  For the reasons that follow, we hold that the BIA abused its discretion by requiring Rodriguez-Manzano to exercise due diligence in moving to reopen his deportation proceedings.

Despite the deferential standard of review we apply here, we cannot affirm the imposition of a judge-made due diligence requirement in this case.  *Lozada* imposed no due diligence requirement on motions to reopen based on claims of ineffective assistance of counsel, and the government points to no other authority to support the imposition of such a requirement in this case.  In fact, the BIA ignored its own precedent  to impose the due diligence requirement in this case.  In *In re Cruz Garcia*, the BIA held that current regulations that impose timing requirements on motions to reopen do not apply to motions to reopen deportation proceedings that commenced before 1992 like Rodriguez-Manzano's.  22 I. & N. Dec. at 1156 n.1 (holding that deportation proceedings commencing prior to June 13, 1992, were governed by 8 U.S.C. § 1252(b) and thus were not subject to the timing requirements of current regulations); *see also Williams-Igwonobe*, 437 F.3d at 455 n.1 (citing *In re Cruz Garcia* for the proposition that motions to reopen deportation proceedings commencing in 1988 are governed by Section 1252(b), not the stricter regulations in place today).  The BIA's decision to impose a due diligence requirement on Rodriguez-Manzano's motion to reopen, directly contravenes *In re Cruz Garcia* by imposing what is effectively a timing limitation on motions to open pre-1992 deportation proceedings.

The BIA's decision to ignore its own precedent in this case is especially troubling because in its decision affirming the Immigration Judge's denial of Rodriguez-Manzano's original motion to reopen his deportation proceedings, the BIA cited *In re Cruz Garcia* to support its observation that "the respondent filed the motion to reopen in a timely manner as the regulation at 8 C.F.R. § 1003.23(b)(4)(A)(2) *imposes no time or numerical limitation on aliens seeking to reopen deportation proceedings conducted in absentia pursuant to section 242(b) of the Act.*" *In re Rodriguez-Manzano*, No. A028 641 721 ¶ 4 (BIA Sep. 28, 2009) (emphasis added) (citing *In re Cruz Garcia*, 22 I. & N. Dec. 1155; *Matter of Mancera*, 22 I. & N. Dec. 79 (BIA 1998)). Thus, the BIA knew and apparently approved of its holding in *In re Cruz Garcia*, relied on it to state that Rodriguez-Manzano's original motion was timely, and then abandoned it in order to justify rejecting Rodriguez-Manzano's motion for reconsideration once he had complied with *Lozada*. The BIA may not apply its precedents arbitrarily. *In re Cruz Garcia* either applies or it does not. We hold that it does, and the BIA's decision to ignore it after citing it approvingly in the same case was an abuse of discretion.

As *In re Cruz Garcia* explained, since 1987—when the deportation proceedings in this case commenced—the Department of Justice ("DOJ") has imposed its own regulatory scheme in this complex area of law that includes time limitations on motions to reopen but *not* in cases as old as this one. *In re Cruz Garcia*, 22 I. & N. at 1159 & n.1. All motions to reopen post-1992 deportation proceedings must be timely filed. *See* 8 C.F.R. § 1003.2(c)(2) (requiring aliens to file motions to reopen "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"); 8 C.F.R. § 1003.23(b)(4)(ii) (setting forth a 180-day deadline for filing motions to reopen deportation orders entered *in absentia*). Those regulations did not apply when proceedings against Rodriguez-Manzano commenced in 1987, and the DOJ did not see fit to apply the current, more

restrictive regulatory scheme retroactively to cases like Rodriguez-Manzano's. *See Cruz Garcia*, 22 I. & N. at 1159 & n.3 (holding that the time limitations in place under current regulations do not apply to motions to reopen governed by Section 1252(b) and noting that "[n]othing prevents the Department of Justice from revising the current regulation to fill the regulatory gap in a manner that would create specific restrictions on motions to reopen deportation proceedings conducted *in absentia* pursuant to [Section 1252(b)]"). In light of the DOJ's imposition of time limitations to post-1992 deportation proceedings but not to pre-1992 deportation proceedings, it was improper for the BIA to insert its policy preferences into this complex and carefully calibrated area of law at this late stage.[4] This is especially true here, where doing so required the BIA to ignore its own precedent directly on point. Therefore, the BIA abused its discretion by denying Rodriguez-Manzano's motion to reopen because he failed to pursue this matter with due diligence.

## IV.

We AFFIRM the denial of Rodriguez-Manzano's first motion to reopen his deportation proceedings because Rodriguez-Manzano failed to comply with *Lozada*. We hold, however, that the BIA abused its discretion by denying Rodriguez-Manzano's motion for reconsideration. It imposed a due diligence requirement that is not part of *Lozada*'s three-part test. Moreover, in doing so, it directly contravened its own precedent and its earlier conclusion in this proceeding relying on that precedent in support of its conclusion that his motion was in fact timely filed. Accordingly, we REVERSE the BIA's denial of

---

[4] We note that given this case's age and its unusual facts, our holding likely will have little effect on immigration law in this circuit moving forward. Because current regulations impose what is effectively a due diligence requirement on post-1992 cases, our holding could only apply to deportation proceedings that commenced *before* 1992. Our decision simply gives meaning to DOJ's decision to apply time limitations to motions to reopen in post-1992 deportation proceedings but not pre-1992 proceedings.

Rodriguez-Manzano's motion for reconsideration and REMAND this case to the BIA for further proceedings consistent with this opinion.